**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**DANIEL JOSEPH BOUDREAUX**                                     **CIVIL ACTION**

**VERSUS**                                                                           **NO. 21-1830**

**LAFOURCHE PARISH, ET AL.**                                     **SECTION: "I"(1)**

### REPORT AND RECOMMENDATION

Daniel Joseph Boudreaux, a state pretrial detainee housed at the Lafourche Parish Correctional Complex ("LPCC"), filed this federal civil action pursuant to 42 U.S.C. § 1983. He sued Lafourche Parish, the "Lafourche Parish Med. Dept.," Sheriff Craig Webre, the State of Louisiana, and "Correct Health." In this lawsuit, he stated his claims as follows:

> I got locked up on the 25th of August 2021. I had gunshot wounds from Lt. Trent Duplantis. I have been in jail for a month without seeing a doctor. The Medical Dept. knows about the lack of blood circulation in my fingers and nurse said I might loose my finger yet I haven't seen a doctor. Correct Health knows about my situation and has rescheduled me twice. The institution (LPCC) has told Mr. Boudreaux's family to stop calling about his injury! Nurses were called on Sept. 17th 3 separate times because Mr. Boudreaux burnt his finger because he can't feel them. Nurses denied him 3 times. Mr. Craig Webre is well aware that his officer has shot Mr. Boudreaux, and still doesn't make his wounds and troubles priority. Correct Health has been notified about these problems, yet do nothing about it. Mr. Boudreaux hasn't went to the hospital even though his gunshot wounds are severe. Sept. 18th 2021 Nurse Keisha refused Mr. Boudreaux even Tylenol. They have refused his right to even soak his arm in warm water to help the blood flow. Mr. Boudreaux is worried about the long term affects of his arm and is very scared. Correct Health only sees people over a computer screen. Grievances in this facility are answered by the people the grievance is on, getting no 3rd party response (as shown with attached grievance).[1]

---

[1] Rec. Doc. 1, pp. 6-7.

Currently pending before the Court are two motions to dismiss, one filed by CorrectHealth Lafourche, LLC ("CorrectHealth),[2] and the other filed by the Lafourche Parish Government.[3] Plaintiff was ordered to respond to both motions,[4] but no responses were filed.

In their motions, the defendants advance several arguments as to why dismissal is appropriate. However, this Report and Recommendation will address only one of those arguments, i.e. that plaintiff failed to exhaust his administrative remedies as required by federal law, because it is dispositive.[5]

---

[2] Rec. Doc. 8. CorrectHealth attached plaintiff's medical records to its motion. However, the Court could not consider those records without converting the Rule 12(b)(6) motion to dismiss to a Rule 56 motion for summary judgment and giving the required notice of the conversion to the parties. See Young v. McCain, 760 F. App'x 251, 255-56 (5th Cir. 2019) (holding that where district court relied, "at least in part," on a prisoner's medical records in considering whether the defendants acted with deliberate indifference, "the district court effectively converted the defendants' Rule 12(b)(6) motion into a summary judgment motion, thereby triggering the requisite procedural safeguards of notice and a reasonable time to respond" under Rule 12(d)); Zantiz v. Seal, 602 F. App'x 154, 160-161 (5th Cir. 2015) (holding that a prisoner's medical records could not be considered with respect to a motion to dismiss his claim alleging constitutionally deficient medical care; noting that although the defendant "cites cases where we have considered medical records in reviewing either the dismissal of a prisoner's in forma pauperis lawsuit as frivolous or the denial of a motion for summary judgment based on qualified immunity, … [he] points to no cases where we have considered medical records at the motion to dismiss stage"; further noting that "[e]vidence that is outside the pleadings cannot be considered for a motion to dismiss" unless the motion is converted to one for summary judgment); 5C Arthur R. Miller, Mary K. Kane & A. Benjamin Spencer, Fed. Prac. & Proc. Civ. § 1366 (3d ed.) ("Once the district court decides to accept matters outside of the pleadings, the presence of the word 'must' [formerly 'shall'] in subdivision (d) of Rule 12 indicates that the judge must convert the motion to dismiss into one for summary judgment and that is what has been done in a vast array of cases, especially when the district court actually considers the contents of this material in deciding the motion." (footnote omitted)).

Here, the Court declines to consider the medical records. As was explained in the foregoing treatise:

> As the language of [Rule 12(d)] suggests, federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it. Numerous cases have recognized this authority. This discretion generally will be exercised on the basis of the district court's determination of whether or not the proffered material, and the resulting conversion from the Rule 12(b)(6) to the Rule 56 procedure, is likely to facilitate the disposition of the action.

Id. (footnote omitted). Here, the medical records are unnecessary to facilitate disposition of the motion because, as explained infra, the motion to dismiss should be granted on the ground that plaintiff failed to exhaust his administrative remedies. Plaintiff's medical records have no bearing on that issue.

[3] Rec. Doc. 15.

[4] Rec. Docs. 10 and 16.

[5] For that reason, the alternative arguments advanced by the defendants need not be – and are not – addressed herein.

## <u>The Federal Exhaustion Requirement</u>

Federal law clearly imposes an exhaustion requirement applicable to lawsuits filed by inmates.  Specifically, the Prison Litigation Reform Act of 1995 ("PLRA"), as amended, provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  A federal district court must be mindful of the following guiding principles when an exhaustion defense has been asserted.

First, the PLRA's exhaustion requirement is "mandatory."  <u>Porter v. Nussle</u>, 534 U.S. 516, 524 (2002).

Second, a federal district court has "no discretion" to waive the exhaustion requirement.  <u>Gonzalez v. Seal</u>, 702 F.3d 785, 788 (5th Cir. 2012).

Third, "there are no futility or other judicially created exceptions to the statutory exhaustion requirements."  <u>Valentine v. Collier</u>, 956 F.3d 797, 804 (5th Cir. 2020) (quotation marks and brackets omitted).

Fourth, so long as an inmate's claim involves an incident of prison life, the nature of his specific claim is immaterial.  "[T]he PLRA's exhaustion requirement applies to **all** inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  <u>Nussle</u>, 534 U.S. at 532 (emphasis added).

Fifth, it is also immaterial that a prison's grievance procedure may not be particularly "user friendly."  Although "[a]ll available remedies must now be exhausted; those remedies need not

meet federal standards, nor must they be plain, speedy, and effective." Id. at 524 (quotation marks omitted).

Sixth, if a grievance procedure potentially offers some form of relief to a prisoner, it is likewise immaterial whether it affords the possibility of the specific relief a particular prisoner seeks. On the contrary, "an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." Booth v. Churner, 532 U.S. 731, 741 n.6 (2001); accord Valentine, 956 F.3d at 804 ("So long as the State's administrative procedure grants authority to take *some* action in response to a complaint, that procedure is considered available, even if it cannot provide the remedial action an inmate demands." (quotation marks omitted)).

Seventh, a prisoner must fully exhaust his available administrative remedies **before** seeking federal relief:

> [T]here can be no doubt that **pre-filing** exhaustion of prison grievance processes is mandatory. … **Pre-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted.**

Id. at 788 (5th Cir. 2012) (emphasis added).

Eighth, although the exhaustion requirement may be inconvenient for a prisoner seeking relief, the United States Supreme Court has held that it is nonetheless necessary to accomplish the PLRA's goals, explaining:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, **Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.** In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

Nussle, 534 U.S. at 524-25 (emphasis added; citations and quotation marks omitted).

Ninth, the harshness of the exhaustion requirement is tempered in one significant respect, namely "the PLRA contains its own, textual exception to mandatory exhaustion." Ross v. Blake, 578 U.S. 632, 642 (2016). The Supreme Court explained:

> Under § 1997e(a), the exhaustion requirement hinges on the "availab[ility]" of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones. And that limitation on an inmate's duty to exhaust … has real content. As we explained in Booth, the ordinary meaning of the word "available" is "'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" 532 U.S., at 737-738, 121 S.Ct. 1819 (quoting Webster's Third New International Dictionary 150 (1993)); see also Random House Dictionary of the English Language 142 (2d ed. 1987) ("suitable or ready for use"); 1 Oxford English Dictionary 812 (2d ed. 1989) ("capable of being made use of, at one's disposal, within one's reach"); Black's Law Dictionary 135 (6th ed. 1990) ("useable"; "present or ready for immediate use"). Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are "capable of use" to obtain "some relief for the action complained of." Booth, 532 U.S., at 738, 121 S.Ct. 1819.

Id.

The United States Supreme Court then identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Id. at 643.

"First, … an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. The Supreme Court explained:

> Suppose, for example, that a prison handbook directs inmates to submit their grievances to a particular administrative office – but in practice that office disclaims the capacity to consider those petitions. The procedure is not then capable of use for the pertinent purpose. … So too if administrative officials have apparent authority, but decline ever to exercise it. Once again: the modifier "available"

requires the possibility of some relief.  When the facts on the ground demonstrate that no such potential exists, the inmate has no obligation to exhaust the remedy.

Id. (citation, quotation marks, and textual alteration omitted).

Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use.  In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it."  Id. at 643-44.  "When an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion.  But when a remedy is … essentially unknowable – so that no ordinary prisoner can make sense of what it demands – then it is also unavailable."  Id. at 644 (quotation marks omitted).

Third, "the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  Id.  Therefore, if a grievance procedure was devised so as to "trip up all but the most skillful prisoners" or if "officials misled or threatened individual inmates so as to prevent their use of otherwise proper procedures," then "such interference with an inmate's pursuit of relief renders the administrative process unavailable."  Id. (quotation marks and brackets omitted).

However, the Supreme Court opined that "[g]iven prisons' own incentives to maintain functioning remedial processes, we expect that these circumstances will not often arise."  Id. at 643.

## Assertion of the Exhaustion Defense

Despite the foregoing, it is also clear that exhaustion is an affirmative defense on which a defendant bears the burden of proof.  See, e.g., Abbott v. Babin, 587 F. App'x 116, 118 (5th Cir. 2014) ("When defendants seek to avail themselves of the affirmative defense of failure to exhaust,

they bear the burden of showing that administrative remedies were not exhausted."); <u>Morgan v. Texas Department of Criminal Justice McConnell Unit</u>, 537 F. App'x 502, 508 (5th Cir. 2013); <u>Dillon v. Rogers</u>, 596 F.3d 260, 266 (5th Cir. 2010).

As noted, the defendants have in fact asserted that affirmative defense in their motions to dismiss.  Although the defense may be asserted in such motions, it is often difficult to prevail on such a motion since the Court is normally limited to reviewing only the complaint when considering a Rule 12(b)(6) motion.  Therefore, for an exhaustion argument to succeed in this context, a plaintiff must generally concede in his complaint that administrative remedies were in fact available and that he simply did not utilize them.  <u>See</u> <u>Carbe v. Lappin</u>, 492 F.3d 325, 328 (5th Cir. 2007) (noting that a dismissal for failure to state a claim predicated on a failure to exhaust is appropriate "if the complaint itself makes clear that the prisoner failed to exhaust").

Here, the defendants argue that dismissal is appropriate because plaintiff did in fact affirmatively concede on the face of the complaint that he did not comply with the exhaustion requirement.  They note that plaintiff used a complaint form which elicited information concerning exhaustion and, in response, he made the following representations:

1.    In Section II(A) of the form, plaintiff was asked, "Is there a prisoner grievance procedure in this institution?"  He answered, "Yes."[6]

2.    In Section II(B), plaintiff was asked, "Did you present the facts relating to this complaint in the prisoner grievance procedure?"  He again answered, "Yes."[7]

---

[6] Rec. Doc. 1, p. 2.
[7] <u>Id.</u>

3.      In Section II(C)(1), plaintiff was instructed that, "[i]f your answer is 'yes,'" then he should "[a]ttach a copy of all administrative grievances you have filed regarding the claims raised in this lawsuit and copies of all prison responses."[8]  Therefore, he attached a copy of an "Administrative Remedy Procedure" form dated September 10, 2021, in which he had stated:  "I have been shot in the arm by the police.  I am in severe pain.  Please give me pain meds.  And also I probably will suffer from P.T.S.D. for the rest of my life.  And I cannot sleep.  Please get with Haydel's Drug Store for my medicine."  A jail official responded on September 13, stating:  "[s]cheduled to see provider in sick call clinic at next available."  **The sections of the form to be utilized for appeals to Step 2 and Step 3 of the grievance procedure were left blank**.[9]

4.      In Section II(C)(2) of the complaint form, plaintiff was then asked, "As to each grievance complaint provided or listed above, have you exhausted or completed all steps in the procedure, including appeals?"  He answered, "No."[10]

5.      In Section II(D), plaintiff was instructed, "If your answer is NO, explain why you have not done so."  He responded:  "Every grievance in the facility is answered by the party the grievance is on."[11]

An initial question, therefore, is whether this Court may use those admissions against plaintiff.  On that issue, the Court is given pause by the fact that, as noted, the admissions were **elicited from plaintiff by questions on the complaint form**, despite the fact that "inmates are

---

[8] <u>Id.</u>
[9] <u>Id.</u> at p. 4.
[10] <u>Id.</u> at p. 3.
[11] <u>Id.</u>

not required to specially plead or demonstrate exhaustion in their complaints." Jones v. Bock, 549 U.S. 199, 216 (2007). After Jones was decided, the United States Fifth Circuit Court of Appeals held:

> It bears emphasis that a district court cannot by local rule sidestep Jones by requiring prisoners to affirmatively plead exhaustion. It is, at least now it is, an affirmative defense under the Federal Rules, a defense belonging to the state that is waived if not asserted. To the extent decisions of this court have suggested otherwise, they did not survive Jones.

Carbe v. Lappin, 492 F.3d 325, 328 (5th Cir. 2007). The Fifth Circuit subsequently went a step further and found that a district court errs if it utilizes a complaint form which "prompts [a prisoner] for information about his exhaustion of administrative remedies" and then dismisses the complaint *sua sponte* on screening "by relying on the elicited information." Torns v. Mississippi Department of Corrections, 301 F. App'x 386, 389 (5th Cir. 2008); accord McDonald v. Cain, 426 F. App'x 332, 333 (5th Cir. 2011) ("The prohibition against requiring prisoners to affirmatively plead exhaustion has been further interpreted by this court to encompass questions in 'form complaint[s]' issued by district courts that are designed to elicit 'information about [a prisoner's] exhaustion of administrative remedies.' (quoting Torns)).

Here, of course, the Court would not be acting *sua sponte*. Quite the contrary, this lawsuit was served on the defendants, and they have now expressly raised the affirmative defense of exhaustion in their motions to dismiss. The question, therefore, is whether defendants may base exhaustion-based motions to dismiss on **nothing more than adverse admissions elicited from a plaintiff through questions posed to him on a complaint form**.

As an initial matter, it must be noted that, given the foregoing jurisprudence, complaint forms which require a prison to answer such questions concerning exhaustion are arguably

problematic.  See Perkins v. Collins, 482 F. App'x 959, 960 (5th Cir. 2012) (noting that questions on such "a form complaint effectively put the onus on [a prisoner] to affirmatively plead and demonstrate exhaustion, contrary to Jones and Carbe").  Nevertheless, the information is still elicited in the prisoner complaint forms available on both the United States Courts' national website  (https://www.uscourts.gov/forms/pro-se-forms/complaint-violation-civil-rights-prisoner) and this Court's own website (https://www.laed.uscourts.gov/pro-se/1983-civil-rights-complaint).

Moreover, the undersigned is unaware of any binding precedent which *prohibits* defendants from basing exhaustion-based motions to dismiss on such elicited adverse admissions, and, as defendants point out, such motions have in fact been granted in this district.  See, e.g., McDride v. Webre, Civ. Action No. 21-0052, 2021 WL 3272220, at *2 (E.D. La. May 20, 2021) (North, M.J.), adopted *sub nom.* McBride v. Webre, 2021 WL 3268934 (E.D. La. July 30, 2021) (Guidry, J.).

Accordingly, because it appears that such motions to dismiss may properly be granted, the next question is whether plaintiff's admissions on the complaint form are, in fact, sufficiently definitive to establish that he failed to exhaust his administrative remedies.  They are.  As noted, he expressly conceded that he had **not** "completed all steps in the [grievance] procedure, including appeals."[12]  Although he indicated that he did not do so because the grievances are answered by the very individuals against whom the grievances are filed, that "excuse" does not relieve him of the duty to utilize the grievance procedure and pursue it to its end.  As explained *supra*, purported "futility" does not excuse exhaustion.  Valentine v. Collier, 956 F.3d 797, 804 (5th Cir. 2020). And although exhaustion is not necessary where grievances are, in fact, a "simple dead end – with

---

[12] Rec. Doc. 1, p. 3.

officers unable or consistently unwilling to provide any relief to aggrieved inmates," Ross v. Blake, 578 U.S. 632, 643 (2016), plaintiff has not alleged that to be the case here. Moreover, as noted, when he submitted his complaint, he was not ignored or rebuffed; on the contrary, he was assured that he would be "[s]cheduled to see provider in sick call clinic at next available."[13] And, in any event, if he was not satisfied with that response, he still had the right to proceed to Steps 2 and 3 of the grievance procedure.

However, based on plaintiff's own admissions, it is clear that he stopped at Step 1 of the jail's grievance procedure. That is not acceptable. The United States Fifth Circuit Court of Appeals has explained: "'Exhaust' is defined as 'to take complete advantage of (legal remedies).'" Underwood v. Wilson, 151 F.3d 292, 294 (5th Cir. 1998) (quoting Webster's New Int'l Dictionary 796 (3rd ed. 1981)); accord Hemphill v. Inglese, 359 F. Appx. 537, 540 (5th Cir. 2010). As a result, administrative remedies are not exhausted unless a prisoner pursued his grievance through the **conclusion** of a multi-step administrative remedy procedure. Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001); see also Hemphill, 359 F. App'x at 540 ("[C]omplying with the first step of an administrative grievance procedure will not suffice to exhaust administrative remedies if the grievance procedure contemplates additional steps."). In the instant case, it is undisputed that plaintiff did not pursue his grievances through the second and third steps of the applicable grievance procedure and, therefore, his administrative remedies were not exhausted. Therefore, dismissal is appropriate.

None of this should be interpreted as a suggestion that an exhaustion defense is best asserted in a motion to dismiss. It is not. A properly supported motion for summary judgment is

---

[13] Id. at p. 4.

not onerous and is generally preferable. See, e.g., Coleman v. Terrebonne Parish Criminal Justice Complex, Civ. Action No. 13-4325, 2013 WL 6004051, at *2 (E.D. La. Nov. 13, 2013) ("[I]t is easy work to establish that dismissal is appropriate pursuant § 1997e(a) in the context of a properly supported motion for summary judgment under Rule 56 ...."). Nevertheless, at least until such time as a superior court rules otherwise, it appears that nothing prevents defendants in this circumstance from asserting the failure to exhaust defense in a motion to dismiss – and obtaining a proper dismissal – under Rule 12(b)(6).

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that the unopposed motions to dismiss filed by CorrectHealth Lafourche, LLC, Rec. Doc. 8, and the Lafourche Parish Government, Rec. Doc. 15, be **GRANTED**. It is **FURTHER RECOMMENDED** that plaintiff's claims against those defendants[14] be dismissed without prejudice, but with prejudice for the purpose of proceeding in forma pauperis pursuant to 28 U.S.C. § 1915, based on his failure to exhaust his administrative remedies.[15]

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from

---

[14] Those defendants are identified in the complaint as Lafourche Parish, the "Lafourche Parish Med. Dept.," and "Correct Health." **The two remaining defendants (Sheriff Craig Webre and the State of Louisiana) have not joined in the instant motions, and so the claims against them are not addressed herein. The claims against those defendants should remain referred to the undersigned and will be addressed in a subsequent Report and Recommendation.**

[15] If an inmate files in federal court an in forma pauperis complaint containing claims that have not been exhausted through available administrative remedies, those claims should be dismissed without prejudice, but with prejudice for the purpose of proceeding in forma pauperis pursuant to 28 U.S.C. § 1915. See Underwood v. Wilson, 151 F.3d 292, 296 (5th Cir. 1998); Walcott v. Crabtree, Civ. Action No. 13-71, 2013 WL 5236643, at *4 n.17 (E.D. La. Sept. 13, 2013); Fitch v. Louisiana Department of Public Safety & Corrections, Civ. Action No. 08-cv-1126, 2009 WL 1076749, at *3 (W.D. La. Apr. 20, 2009). Plaintiff filed this lawsuit in forma pauperis. See Rec. Docs. 2 and 3.

attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 22nd day of February, 2022.


**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**